

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2008

# Yong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5051

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Yong v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1750.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1750

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-5051
_____

YUE XIANG YONG,
a/k/a Yue Xiang Yuan,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A78-015-950)
Immigration Judge: Rosalind Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2008

Before: AMBRO, FUENTES and FISHER, <u>Circuit</u> <u>Judges</u>

(Opinion filed:   January 14, 2008)
_____

OPINION
_____

PER CURIAM

Yue Xiang Yong petitions for review of an order of the Board of Immigration

Appeals ("BIA") affirming the Immigration Judge's ("IJ") final order of removal.  For the

reasons that follow, we will deny her petition.

Yong, a native and citizen of China, arrived in the United States in July 2002 without proper documentation. She was placed in removal proceedings and applied for asylum, withholding of removal, voluntary departure, and relief under the Convention Against Torture. Her petition was based on the claim that she had been forced to have an abortion in July 1994, after becoming pregnant with a second child in violation of China's family planning policy.

The IJ denied relief, concluding, after a hearing, that Yong's testimony was "not believable or consistent or sufficiently detailed in light of general conditions in the home country to provide a plausible and coherent account of the basis for the alleged fear." Yong appealed to the BIA, which dismissed the appeal, holding that it did not find the IJ's evaluation of her testimony to be clearly erroneous. Yong, proceeding pro se, timely filed a petition for review.[1]

We have jurisdiction over this petition for review under 8 U.S.C. § 1252(b). To be granted asylum as a refugee, an applicant must establish that she is unable to return to her homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The IJ denied relief because she found that Yong was not

---

[1]Yong initially filed her petition for review in the United States Court of Appeals for the Second Circuit, which transferred the petition to this Court. See 8 U.S.C. § 1252(b)(2); 28 U.S.C. § 1631.

2

credible. That determination is a factual finding subject to review under the substantial evidence standard. In other words, "[w]e will defer to and uphold the IJ's adverse credibility determinations if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' but such findings must be based on inconsistencies and improbabilities that 'go to the heart of the asylum claim.'" Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

As recounted by the IJ, Yong's testimony as to facts material to her asylum application changed over time. In her asylum affidavit and during her credible fear interview, she claimed that she was four months pregnant in March 1994, when her pregnancy was discovered during a required check-up. By contrast, during the asylum hearing, she testified that she was one month pregnant at that time. On direct examination, Yong testified that she was informed on March 13, 1994, the day of her check-up, that she should report that afternoon for an abortion. She testified that, upon receipt of that notice, she became worried so she ran away to her mother's village, and that four months later, on July 8, 1994, officials arrived at the home of her mother-in-law to take her for the abortion. On cross-examination, Yong testified that after going to her check-up in March, she received a notice in May informing her that she had to undergo an abortion, which was then performed in July. While Yong twice testified that she received the first notice requiring her to go for a check-up in March 1994, the notice which she

3

identified and which was admitted into evidence was dated April 13, 1994, and stated that she was to report for a medical examination by April 20, 1994. Additionally, the abortion notice that she submitted in support of her claim was dated May 26, 1994, and states that she was to report to an abortion clinic within ten days of receiving the notice.

The IJ also explained that while Yong claimed during her credible fear interview that she had two children, she testified at the asylum hearing that she had only one. Yong claimed that she had told the Immigration Officers at the airport that she had two children because she was scared that they would send her back to China if she revealed that she only had one child, and because her husband had reported that he had two children during his asylum hearing and she wanted their stories to be consistent. The IJ also noted that in her credible fear interview Yong testified that she had been arrested and detained and that her house had been torn down as punishment and her husband had been injured in the process. However, at the asylum hearing, Yong offered no such testimony.

When questioned about the basis for her claim of persecution, Yong testified that she feared that she would be arrested upon her return to China to prevent her from having any more children. The IJ concluded that there was no basis in the record for her belief, particularly in light of the fact that there was no indication that her husband had suffered such consequences upon his return to China, nor did China's family planning policy bar a woman in Yong's circumstances from having another child.

Based on the foregoing, the IJ held that Yong was not credible and, accordingly,

that she had failed to establish that she had suffered past persecution or was likely to suffer future persecution upon return to China on account of any of the enumerated grounds. See 8 U.S.C. § 1101(a)(42). For the same reasons, the IJ concluded that Yong had failed to establish eligibility for withholding of removal, see 8 U.S.C. § 1231(b)(3), and that she had not demonstrated a likelihood of torture if removed to China. See 8 C.F.R. § 208.16(c)(2). The IJ's adverse credibility finding was based on specific reasons supported by the record, and Yong has not shown that the record compels a finding that she was credible and entitled to relief. See Zheng v. Gonzales, 417 F.3d 379, 383 (3d Cir. 2005). Accordingly, we will deny the petition for review.